## GULF, COLORADO & SANTA FE RAILWAY CO. v. LON FOWLER.

### No. 1462.

**1. Carrier—Delivery—Conversion.**

A horse shipped from Kentucky to Texas was received by a railroad from a connecting line under a way bill designating T. & W. as the consignees; and being transported to its destination, it was there demanded by F., the owner, who refused to produce a bill of lading or other evidence of his right to have the horse delivered to him: delivery being declined unless F. obtained authority therefor from T. & W., and the horse having been sold by the carrier as unclaimed perishable property (Rev. Stats., 327-330), in a suit by F. for the value of the horse, as upon a conversion, held: (1) the refusal to deliver to F. under the circumstances was no conversion. (2) The carrier was not bound to accept the state-

ment of F., that he was the owner, as true. It was its duty to exercise caution in delivering the property, being liable, in all events, for delivery to those entitled to receive it. (3) It was not its duty to obtain and furnish F. the evidence of his right to receive the shipment. but was his to furnish same to carrier. (4) See case for fuller statement of facts under which conduct of carrier in refusing to surrender property to owner without evidence of his right and selling same on his failure to produce such evidence was held proper and no conversion of the property.

.2.   Practice in Appellate Court.

Where facts were such that a verdict should clearly have been rendered for defendant, and it was not reasonable to suppose that plaintiff's case can be strengthened on another trial, upon an appeal from a judgment upon a verdict recovered by plaintiff below, the Appellate Court reversed and rendered judgment for defendant.

APPEAL from Tom Green.   Tried below before Hon. J. W. TIMMINS.

*J. W. Terry* and *Chas. K. Lee,* for appellant.—The undisputed evidence showing that the shipment was received by defendant under a transfer sheet or way bill which directed it to deliver same to Tracey & Wilson, and there being nothing in the evidence to show that defendant ever knew or had any reason to know, further than his own bare statement, that Lon Fowler, plaintiff, ever had anything to do with the horse or had any claim thereto, in order to impose upon defendant the obligation, expense and trouble of investigating the title to the horse and determining who was the proper consignee thereof, it was the duty of plaintiff to exhibit to defendant's agent some evidence of right, and on his failure to do so verdict should have been for the defendant.

Even if there was any obligation on defendant to investigate as to plaintiff's title and right to receive the horse, the undisputed evidence shows that defendant used all reasonable means to that end, and was willing and ready to deliver the same as soon as it could get information that would protect it in the delivery, and the verdict should therefore have been for the defendant.   Hutchison on Carriers, secs. 344, 407, 408, 390;  Railway v. Johnston, 63 N. W. Rep., 144.

*D. D. Wallace* and *T. C. Wynn,* for appellee.—1.   An unqualified refusal by a common carrier to deliver goods to the new owner and party entitled to their possession is conversion. McEntire v. New Jersey Steamboat Co., 45 N. Y., page 34;  Schouler's Bailment, page 499;  Roberts v. Yarboro, 41 Texas, page 453.

2.   A common carrier who refuses to deliver goods to the owner and party entitled to their possession is charged with conversion unless such refusal was qualified and was made in good faith, and there was reasonable doubt as to such owner's right to demand and receive such goods. And the questions of a qualified refusal, reasonable doubt and good faith are matters to be determined by a jury.   Roberts v. Yarboro, 41 Texas, page 453;  Blakenship v. Berry, 28 Texas, page 448;  Schouler's Bailment, page 499;  Hutch. on Carriers, articles 344 and 408;  Railway v. Humphries, 4 Texas Civ. App., 333.

3.   When appellee, the true owner, demanded possession of the horse,

and appellant refused to deliver it upon such demand because he doubted the authority of appellee to such possession, it then became the duty of appellant to place his refusal strictly upon such ground. Otherwise the refusal affords presumptive evidence of conversion, and the burden of investigating the right of appellee to such horse within a reasonable time rested upon appellant. Sandford v. Wilson, 2 Willson's C. C., section 250; Roberts v. Yarboro, 41 Texas, 450; Ingalls v. Bulkley, 15 Ill., 224; Freeman v. Peckham, 47 Ind., 147; Vanzant v. Hunter, 1 Mo., 71.

4. A common carrier who delivers goods to their true owner and party entitled to their possession, is freed from any liability for such delivery, notwithstanding such delivery may have been made in disobedience to the instructions of consignor or the terms of the bill of lading. Roberts v. Yarboro, 41 Texas, page 453; Schouler's Bailment, 499; Clay v. Gage, 1 Texas Civ. App., 663.

It is optional with a shipper to take or not to take a bill of lading. Sayles' Texas Civ. Stats., art. 280.

5. A way bill is not part of a bill of lading, and the shipper is not charged with its contents. Schloss v. Railway, 22 S. W. Rep., 1014.

6. The Fort Worth & Rio Grande Ry. Co., a connecting carrier, was freed from any duty or responsibility when it actually delivered the horse in good order to appellant, and appellant was charged with the responsibility of a delivery to the rightful owner. Hutch. on Car., article 102.

### STATEMENT OF THE CASE.

FISHER, Chief Justice.—Appellee instituted this suit in District Court, Tom Green County, alleging, in substance, that on September 12, 1892, he was owner of a certain horse of value of $2500, which was shipped from Lexington, Ky., to San Angelo, Texas; that it arrived at San Angelo about September 20, 1892; that he demanded from defendant possession of same, and offered to pay it all freight charges and expenses due thereon; that defendant willfully and unlawfully refused to deliver to plaintiff said horse, and willfully and unlawfully and forcibly kept said horse and converted it to its own use, and refused to account to plaintiff for same or his value, to plaintiff's damage $2500, for which he sued.

Defendant answered by plea to the jurisdiction, general and special exceptions, general denial, and special answer, setting up, in substance, that defendant received horse at Brownwood under a way bill directing it to deliver it to Tracy & Wilson, at San Angelo, which was the only information defendant had as to who was owner or consignee of the horse; that it did not know Lon Fowler was owner or consignee of same, and did not learn such facts until long afterwards; that it promptly transported the horse to San Angelo, and was ready and willing to deliver it to Tracy & Wilson, the only parties defendant knew had any interest therein; that defendant refused to deliver Fowler the horse

because he failed to show any authority, other than his own unsupported statement that it belonged to him, or any authority from Tracy & Wilson to deliver the horse to him; that, on receipt of notice of his claim to the horse, it at once applied to the F. W. & R. G. Railway Co. to advise it whether or not Fowler was entitled to delivery of the horse, and thereafter repeated such request for information, and used all reasonable efforts to ascertain who was proper consignee of shipment; that Fowler never presented defendant any evidence of his right to receive the horse, and that defendant was not advised by the F. W. & R. G. Railway Co., or anyone else known to defendant who had a right to control the shipment or delivery of same, that Fowler was entitled to have delivery of the horse until about October 1, 1892; that at such time Fowler had left San Angelo, and that on receipt of such authority defendant advised Fowler that it was ready and willing to deliver the horse to him on payment of freight and other charges; that Fowler failed and refused to receive the horse for more than forty-eight hours after such notice to him, and, acting under article 288 of Revised Statutes of Texas, defendant sold the horse at public sale, giving the notice required by law, and received for it the sum of $275, that, after deducting proper charges, it had to credit of plaintiff $58.15, which it was ready and willing at all times to pay plaintiff; that it did not receive the horse from plaintiff, and did not know plaintiff in connection with same, and had no connection with transportation of the horse before it reached Brownwood; that on failure of Tracy & Wilson to call for the horse, or of anyone else to present to it authority to receive same, for proper protection and preservation of the horse it had same placed in a livery stable and taken care of; that long before sale plaintiff was notified by wire that if charges on the horse were not paid, defendant would sell it under the law; that plaintiff wholly disregarded such notice and refused to receive the horse or pay charges; that if defendant ever refused to deliver the horse to plaintiff, it was because of his failure to show proper authority or right to receive same, and because defendant was in doubt as to plaintiff's right to receive the horse; that plaintiff was so advised at time of such refusal to deliver, and plaintiff at all times failed and refused to furnish defendant any evidence of his right to receive the horse. There was trial before a jury and verdict and judgment for plaintiff for $625, value of the horse, less freight charges, $93.62, and $10 for keeping the horse from September 20 to September 30, 1892, being $521.38, with interest from September 30, 1892.

We find the following facts: The appellee Fowler was the owner of the horse in question, which was shipped from Lexington, Ky., consigned to Tracy & Wilson, as shown by the way bill received by the appellant's road. The horse arrived at Brownwood, Texas, over the Ft. Worth & Rio Grande Railway, and was there delivered to the appellant for transportation to San Angelo, Texas, at which place the horse arrived September 19, 1892. Appellee Fowler on that day demanded possession of the horse, and stated that he was the owner, whereupon defendant's

station agent informed him that the horse was consigned to Tracy & Wilson, and called upon Fowler for some authority for him to receive the horse, or some evidence of his ownership. Fowler did not produce a bill of lading for the horse, or any evidence of his ownership or right to receive and demand possession, except the statement that he owned the horse, whereupon the appellant's agent refused to surrender the horse to Fowler.

September 28, appellant's agent received a telegram from an agent of the Ft. Worth & Rio Grande Railway Company, as follows: "About the horse at San Angelo, Tustin (freight claim agent Mo. Pac. Ry.) advises agent Memphis, states horse for Tracy & Wilson should have been billed care Lon Fowler. I presume it is all right to deliver to this party." This telegram was received by Mr. White, general freight agent, Ft. Worth & Rio Grande Railway Co., from Mr. Fenby, auditor of the Texas & Pacific Railway Co., which was forwarded as above to the appellant's agent. The horse came over the two named roads before reaching appellant's road. About September 30, Fowler again demanded the horse, but was refused possession because he did not produce or show any authority or right except his claim of ownership. The appellant offered to deliver upon both occasions the horse to him, if he would show authority to receive the horse. He offered no authority except the statement that he was the owner. As soon as a demand was made upon the appellant for the possession of the horse, it, through its agents, used reasonable diligence to ascertain if it should deliver to Fowler. At the time demand was made for possession of the horse by Fowler, the station agent of appellant at San Angelo suggested that he telegraph and get authority from Tracy & Wilson, who, it seems, resided in Kentucky, and he would deliver the horse to Fowler, but he declined to do so, or to produce any bill of lading or other evidence of right to the horse. Fowler left San Angelo about September 30, 1892, for Kentucky. About October 10, the auditor of appellant's company notified the station agent at San Angelo to deliver the horse to Fowler. Fowler was then absent from the State, in Kentucky, and there was no one in San Angelo to represent him. The station agent at once mailed a notice to Fowler, directed to San Angelo, stating that he had received instructions to deliver to him the horse, and the agent also enquired and found out his address in Kentucky, and at once wired him that he was ready to deliver horse to anyone authorized by him to receive it. This notice and telegram were not answered by Fowler. It does not appear from the evidence but that Fowler could, by reasonable and nominal expense and within a reasonable time, have received from Tracy & Wilson, with whom he was acquainted, authority to receive the horse, but he made no efforts in this direction. The horse was advertised and sold by appellant under articles 286 and 288, Sayles' Civil Statutes, for $275. There is evidence supporting the verdict of the jury to the effect that the horse was of more value than the sum realized at the sale. There are facts on other

points, but our findings cover the questions that we consider important to find upon.

*Opinion.*—From these facts we reach the conclusion that a conversion of the property in question was not shown. The property was consigned to Tracy & Wilson, and the railway company was only required to deliver to them or some one who would show a right to receive the property. Railway v. Adams, 49 Texas, 748; Railway v. Freeman, 16 S. W. Rep., 109. The bare statement by Fowler that he was the owner was not bound to be accepted by the carrier as true, when the written evidence of the shipment in its possession showed that others were the consignees and entitled to possession. Fowler had it in his power to produce evidence of his authority to receive the horse, or if not having it present, he could and should have obtained it, and, failing so to do, he was not in the exercise of that degree of care that rested upon him as a man of ordinary prudence. The conclusion is irresistible from the evidence that his failure to properly have the horse consigned to him, or his failure to obtain authority from the consignees to receive the property, was the cause of his failure to receive it when he demanded it. Under the doctrine of the Adams Case, supra, the railway company would be liable, in all events, for a proper and correct delivery of the property to those that were entitled to receive it, and a mistake in this respect, although arising out of an abundance of caution, would not shield it from liability to the true owner. With this aspect of the case in view, it was the right and duty of the appellant to exercise caution in delivering the property to one who declined and refused to present any evidence of right thereto, when it was shown that it was consigned to another. The telegram received by appellant on September 28, saying that the horse should have been billed care of Fowler, did not emanate from the consignees, and would not be binding upon them. To say all that may be said concerning this telegram, it was not a specific direction concerning the disposition of the horse, and it in effect left the risk of a delivery upon the appellant, and, under the circumstances, it was not an abuse of discretion for the appellant to decline to observe it. The conduct of appellant's agents exhibited reasonable diligence to ascertain the rights of Fowler in the matter; and in efforts to make a delivery to him when it was ascertained that he should receive the horse. In fact, no other reasonable conclusion can be reached from the evidence than that the failure and refusal to deliver the property to Fowler was owing to his failure to comply with the reasonable request made by appellant, that he furnish some evidence of his right to the property, when, as shown in this case, by the exercise of reasonable diligence he could have obtained and produced evidence of his authority to receive the property. If he failed to obtain a bill of lading showing his rights in the matter, or if he failed to obtain authority from the consignees for possession of the property, he was alone to blame, and his negligence or, more properly, his want of care in this respect, cannot be charged to

appellant. The appellant did not rest under the duty of obtaining and furnishing him the evidence of his right and authority to receive the shipment. It could act upon the bill of lading or way bill as showing who was entitled to receive the property until furnished with some better evidence showing a right in some one else. The bare statement by a stranger to the bill of lading or way bill that his right of possession is superior to that of the consignee is to be accepted as true at the peril of the carrier, and in the exercise of the care that rests upon it, it would be the extreme of the want of diligence for it to give more credence to such an assertion than to the written evidence concerning the shipment in its possession, showing that some one else is the consignee and is entitled to possession. The questions in the case discussed seem to be fully developed by the evidence, and in view of the testimony of the appellee, it is not reasonable to suppose that his case in that respect may be strengthened upon another trial, therefore we reverse the judgment of the court below and here render judgment in favor of appellant. This disposition of the case is without prejudice to any right or claim, if any, the appellee may have against the appellant for the proceeds of the sale of the horse, or failure to comply with the law under which it was sold, if there has been a violation of it. These questions we leave undecided, as we cannot dispose of them in view of the case made by the plaintiff's pleadings. His action is solely one for conversion, and having held that there was no conversion, there is nothing else for us to decide.

*Reversed and rendered for appellant.*

Delivered March 4, 1896.

Writ of error refused.